**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                )

**TD BANK, N.A.,**                    )

                                )

                **Appellant,**      )       **Civil No.**

                                )       **12-40009-FDS**

       **v.**                           )

                                )

**MARYANN LANDRY,**         )

                                )

                **Appellee.**        )

_____)

**MEMORANDUM AND ORDER**

**SAYLOR, J.**

        This is an appeal from a final order of the United States Bankruptcy Court for the District of Massachusetts. Defendant TD Bank, N.A., is the holder of a second mortgage on plaintiff Maryann Landry's primary residence at 47 Frost Road in Tyngsborough, Massachusetts. The value of the property apparently declined between the date of Landry's bankruptcy petition and the effective date of her chapter 13 plan. Whether TD Bank's mortgage is wholly unsecured depends on the date of valuation.

        TD Bank brought this appeal challenging the Bankruptcy Court's determination of that date. The Bankruptcy Court held that the proper date was the effective date of Landry's Chapter 13 plan; TD Bank contends the proper date is the date the petition was filed. For the following reasons, the order of the Bankruptcy Court will be reversed.

**I.**       **Background**

        On October 31, 2005, Maryann Landry borrowed $132,000 from TD Bank N.A., secured by a mortgage on her principal residence, located at 47 Frost Road, Tyngsborough,

Massachusetts.  On April 30, 2009, Landry filed a Chapter 13 bankruptcy petition and her first

Chapter 13 Plan.  In Schedules A and C of her petition, Landry listed the value of the property at

$369,486.  (Record Vol. 1, at 6, 12).  In Schedule D, she listed mortgages against the property

held by Countrywide Home Loans, now BAC Home Loan Security, L.P. (in the amount of

$310,240), TD Bank, N.A. (in the amount of $123,447), and Citibank, N.A. (in the amount of

$87,471).  (*Id.* at 12-13).[1]

On June 10, 2011, TD Bank filed motions for relief from the automatic stay and co-

debtor relief under 11 U.S.C. § 362(d)(1), arguing, among other things, that it was entitled to

relief because Landry had failed to pay TD Bank on its mortgage and had been delinquent since

June 2009.  On July 1, 2011, Landry filed a motion to avoid TD Bank's secured claim, alleging

that the value of the property had fallen below the balance owed on the first mortgage.[2]  Landry

contended that the second and third mortgages could be avoided as they were wholly unsecured,

and, that therefore TD Bank was not entitled to relief.  (*See* Record Vol. 2, at 2-6).

On December 14, 2011, the Bankruptcy Court held that the property must be valued at

the effective date of the Chapter 13 plan rather than the date the petition was filed.  It further

held that if the property is worth the amount alleged by Landry as of the later date, then TD

Bank's mortgage was wholly unsecured and could be avoided.  The Bankruptcy Court ordered

---

[1] Apparently, on June 8, 2009, TD Bank filed a secured proof of claim in the amount of $123,840.32, and on July 6, 2009, the first mortgage holder, BAC Home Loan Servicing, L.P., filed a secured proof of claim in the amount of $318,673.06.  (Def. Mem. at 4).  TD Bank has established that its mortgage has second priority—that is, above the Citibank mortgage.

[2] Landry filed a first motion to avoid TD Bank's claim on July 10, 2009 (prior to the resolution of the dispute between TD Bank and Citibank).  In that motion, she asserted that the property had a value of $369,486, and as the third mortgage holder, there was no value in the property to secure TD Bank's claim.  (Record Vol. 1, at 66-68).  TD Bank responded that it properly held a second mortgage position.  Landry's first motion to avoid was withdrawn without prejudice at a Bankruptcy Court hearing on October 14, 2009.  (*Id.* at 139-44).

(1) that Landry file an amended Chapter 13 plan that treated all but the first mortgage as wholly

unsecured; (2) that an evidentiary hearing be held to determine the fair market value of the

property for purposes of determining TD Bank's motions for relief; and (3) that Landry's motion

to avoid be denied without prejudice.  Landry filed an amended Chapter 13 plan on December

23, 2011.  *In re Landry*, 462 B.R. 317, 324 (Bankr. D. Mass. 2011).

On December 28, 2011, TD Bank filed this appeal of the Bankruptcy Court's decision,

requesting that this Court reverse the Bankruptcy Court's orders concerning Landry's motion to

avoid and its motion for relief from the automatic stay and co-debtor relief.  Specifically, TD

Bank contends that the Bankruptcy Court erred in determining that the operative date for valuing

the property for purposes of §1322(b)(2) at "the effective date of the plan," and instead should

have valued the property at the date the bankruptcy petition was filed.

## II.   <u>Jurisdiction and Standard of Review</u>

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of

the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  The Bankruptcy Court's findings of

fact are reviewed for clear error and its conclusions of law are reviewed *de novo*.  *See In re Hill*,

562 F.3d 29, 32 (1st Cir. 2009).  This Court "may affirm, modify, or reverse [a Bankruptcy

Court's order] or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

The Bankruptcy Court's Order was a final order, and there are no disputed questions of fact

raised on appeal.

## III.   <u>Analysis</u>

### A.   <u>Legal Framework</u>

Section 506(a)(1) of the bankruptcy code provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate
has an interest . . . is a secured claim to the extent of the value of such creditor's
interest in the estate's interest in such property . . . and is an unsecured claim to
the extent that the value of such creditor's interest . . . is less than the amount of
such allowed claim.  Such value shall be determined in light of the purpose of the
valuation and of the proposed disposition or use of such property, and in
conjunction with any hearing on such disposition or use or on a plan affecting
such creditor's interest.

11 U.S.C. § 506(a)(1).  In other words, subject to certain exceptions, claims may be generally
divided into secured and unsecured components, with the secured component being the amount
of the claim up to the value of the property at issue, and the remainder of the claim—that is, the
amount in excess of the value of the property—being unsecured.

An exception set forth in § 1322(b)(2) prohibits the modification of "a claim secured only
by a security interest in real property that is the debtor's principal residence . . . ."  11 U.S.C. §
1322(b)(2).  The Supreme Court has held that § 1322(b)(2) prohibits the bifurcation of an
*undersecured* home mortgage holder's claim (that is, where the amount of the claim is only
partially secured by the value of the property) into its secured and unsecured components.
*Nobelman v. American Sav. Bank*, 508 U.S. 324, 332 (1993).  Left unresolved by that decision is
whether § 1322(b)(2) prohibits the avoidance of a *wholly unsecured* mortgage on the debtor's
principal residence.  Although a subject of debate among the courts, the leading case in the First
Circuit, *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000), held that a wholly unsecured claim is
not protected from modification under § 1322(b)(2).  *In re Mann*, 249 B.R. at 836-37.  Thus, in
the First Circuit, a wholly unsecured claim on a principal residence—that is, a home mortgage
where there is insufficient value in the home to support even a penny of the claim—may be
modified (and possibly avoided in full) in the Chapter 13 plan.

At issue here is the question of the date on which the property should be valued in order

4

to determine whether § 1322(b)(2) applies.  Landry contends (and the Bankruptcy Court held) that the value of the property should be determined for these purposes as of the effective date of the Chapter 13 plan—which, in this case, may result in a valuation of less than the value of the first mortgage.  TD Bank contends that the value of the property should be determined as of the date the petition was filed, in which case the operative value of the property would be approximately $369,000.  It is undisputed that BAC Home Loan Servicing holds the first mortgage on the property worth approximately $318,000.  Consequently, whether TD Bank's mortgage is undersecured or wholly unsecured (and therefore whether it is subject to protection from modification under § 1322(b)(2)) depends upon when the property is valued.

### B.    Determining the Proper Valuation Date

The Court's "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin:  with the language of the statute itself.'"  *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 723-724 (2011) (citation omitted).  As discussed, § 506(a)(1) dictates how courts are to determine the value of property in order to decide whether or not a creditor's claim is secured. The statute provides little guidance; it simply states that "the value of [a] creditor's interest" in the collateral "shall be determined in light of the purpose of the valuation and of the proposed disposition of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  11 U.S.C. § 506(a)(2).  The plain language of § 506(a) then requires that courts adopt a flexible approach to the determination of secured status. *See In re Sarno*, 463 B.R. 163, 166 (Bankr. D. Mass. 2011);  *In re SW Hotel Venture, LLC*, 460 B.R. 4, 31-32 (Bankr. D. Mass. 2011).  Consequently, the time of valuation must also be flexible—"[a]lthough the amount of a creditor's claim is fixed at the petition date, there is

5

nothing to indicate that the value of the claim must also be determined at the petition date." *In re Abdelgadir*, 455 B.R. 896, 902 (B.A.P. 9th Cir. 2011); *see also* 11 U.S.C. § 502(b).

This flexibility, however, is not without limits.  In determining when the valuation of the claim should occur, courts must consider, among other things, the purpose of the valuation; furthermore, courts are not "allow[ed to] use [] different valuation standards based on the facts and circumstances of individual cases." *Associates Commer. Corp. v. Rash*, 520 U.S. 953, 965 n.5 (1997).  Thus, for example, when conducting a valuation for the purpose of determining whether proposed modifications in a debtor's bankruptcy plan comply with the requirements of confirmation, it may be appropriate to value the claim at the time of effective date of the plan; however, if the purpose of the valuation is to determine whether a creditor's claim is entitled to certain statutory protections, it may be appropriate to fix the value of the property as of the petition date.  *See In re Abdelgadir*, 455 B.R. at 902; *In re Mann*, 249 B.R. at 838; *In re SW Hotel*, 460 B.R. at 29 (citing *In re Delta Resources, Inc.*, 54 F.3d 722, 729-30 (11th Cir. 1995)).

The purpose of the valuation at issue, therefore, is critical to the analysis.  The Bankruptcy Court stated that the purpose of the valuation was to determine how the property should be treated under Debtor's Chapter 13 plan.  *See In re Landry*, 462 B.R. at 321-23.[3] However, while the valuation at issue has arisen in the context of a Chapter 13 plan (as all modifications of claims occur through such plans), its purpose is to determine whether TD Bank is entitled to relief from the automatic stay—an issue that turns on whether its claim is entitled to

---

[3] Early in its analysis the Bankruptcy Court indicated that the valuation was for "§ 1322(b)(2) purposes." *In re Landry*, 462 B.R. at 321.  It later it stated that "the issue that is presented to the Court is how to value the Property for the purpose of plan confirmation." *Id.* at 322.  Finally, it expressly stated that "the purpose of the valuation of the Property is to determine how it should be treated under the Debtor's Chapter 13 Plan by which she intends to retain her home." *Id.* at 323.

the protection from modification pursuant to § 1322(b)(2).

Relying on the "cramdown" provision of the Bankruptcy Code in § 1325(a)(5), the Bankruptcy Court reasoned that Congress had indicated that all valuations relative to plan confirmation should "be conducted in the context of the present, rather than the past." *Id.* at 322.[4]  This, however, reads too much into the statute.  The relevant portion of § 1325(a)(5) simply states that the court shall confirm a plan if, "with respect to each allowed secured claim provided for by the plan[,] . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ."  § 1325(a)(5)(B)(ii).   As the language of the statute indicates, whether a claim is an "allowed secured claim" must be determined *before* the value of the property to be distributed under the plan is determined.  In other words, "§ 1325(a)(5)(B)(ii) merely provides that the size of a secured claim should be adjusted by a discount factor, but the section presupposes that the value of the claim has already been fixed." *In re Brager*, 39 B.R. 441, 443 (Bankr. E.D. Pa. 1984); *accord In re Allen*, 240 B.R. 231, 237-38 (Bankr. W.D. Va. 1999) ("[T]he 'effective date of the plan' is applicable not to the valuation of the collateral but rather the valuation of the property to be distributed to the secured creditor in payment of its 'allowed secured claim' . . . .").[5]  This is only logical; because § 1322(b)(2) limits the types of claims that may be

---

[4] The Bankruptcy Court also relied on  *In re SW Hotel Venture, LLC*, 460 B.R. 4 (Bankr. D. Mass. 2011).  However, the court in *SW Hotel Venture* merely concluded that, pursuant to the plain language of § 506(a)(1), courts should apply a flexible approach to valuation, considering, among other things, the purpose that valuation would serve.  The *SW Hotel Venture* court then found that the petition date was not the appropriate where the purpose of the valuation was to determine whether a secured creditor was entitled to postpetition interest and fees under Chapter 11.  *Id.* at 26.

[5] This is consistent with the analysis in *In re Pires*, 2011 Bankr. LEXIS 4259 (D. Mass. Nov. 7, 2011).  There, the court described the various options for treatment of secured claims.  In describing the method at issue here, the court presupposed that the secured status of the claim has been established before conducting a valuation for purposes of § 1325(a)(5)(B)(ii).  Specifically, the court stated:

modified through bankruptcy plans before determining how the property should be treated under

such a plan (that is, before determining how the claim should be modified), the Court must first

determine whether the claim is protected by § 1322(b)(2) (that is, whether it may be modified at

all).  *See In re Pires*, 2011 Bankr. LEXIS 4259, at *12-*13 (D. Mass. Nov. 7, 2011).

The Bankruptcy Court's apparent conclusion that the purpose of the valuation was to

determine how to distribute the property under the plan conflates the analysis of whether a

creditor holds a particular type of claim (a claim secured by the debtor's principal residence)

with a determination of how the value of the property is to be distributed *after* the nature of the

claim has been established.  *See In re Benafel*, 461 B.R. 581, 587 (B.A.P. 9th Cir. 2011)

(discussing *In re Abdelgadir*, 455 B.R. at 902).  *Cf. In re Crain*, 243 B.R. 75, 82-83 (Bankr. C.D.

Cal. 1999) (determining that "valuation should occur on or near the time of the chapter 13

confirmation hearing" while distinguishing a case that "utilized the date of the filing of the

petition as the appropriate date for determining the extent of the lender's collateral for purposes

of § 1322(b)(2) only."); *In re Farmer*, 257 B.R. 556, 561-62 (Bankr. D. Mont. 2000) (valuing the

---

The second option is known as the "modification" or "lien stripping" option and is permitted by 11 U.S.C. § 1322(b)(2) but only as to secured claims other than those "secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2).  Under a plan of this kind, the debtor modifies the rights of the secured creditor more extensively by (I) bifurcating that claim into secured and unsecured claims in accordance with 11 U.S.C. § 506(a), (ii) paying the unsecured claim a dividend, usually less than 100 percent, through the trustee over the duration of the plan, which may not exceed five years, (iii) providing that the secured creditor retains the lien securing its secured claim until the earlier of entry of discharge or payment in full of the underlying debt as determined under nonbankruptcy law, as required by 11 U.S.C. § 1325(a)(5)(B)(I), and (iv) paying the secured claim—also through the trustee and within the term of the plan—with a stream of equal monthly payments whose value, as of the effective date of the plan, is not less than the allowed amount of the secured claim, as required by 11 U.S.C. § 1325(a)(5)(B)(ii) and (iii)(I).  For two reasons, this option is seldom used:  § 1322(d) requires payment of the secured claim in full within a period of not more than five years, and few chapter 13 debtors can afford the payments required to accomplish this; and § 1322(b)(2) makes this option inapplicable to claims secured only by a security interest in real property that is the debtor's principal residence.

*In re Pires*, 2011 Bankr. LEXIS 4259, at *12-*13.

collateral as of the petition date for adequate protection purposes, and as of the confirmation date for purposes of cramdown).[6]

Of course, the fact that a claim's status under § 1322(b)(2) must be determined before confirmation of a bankruptcy plan does not necessarily require the conclusion that the appropriate valuation date is the petition date. The Court therefore must determine the purpose of a valuation under § 1322(b)(2). That analysis again begins with the statutory text. Section 1322(b)(2) prohibits the modification of "a *claim* secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). "A 'claim' is a term of art in a bankruptcy proceeding" that defines a creditor's right of payment and "arises at the date of the filing of the petition." *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D.N.H. 1994) (citations omitted); *In re Dean*, 319 B.R. 474, 478 (Bankr. E.D. Va. 2004) ("As of [the petition date] date, creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions is determined." (quoting *In re Johnson*, 165 B.R. 524, 528 (Bankr. S.D. Ga. 1994)); *In re Boisvert*, 156 B.R. 357, 359 (Bankr. D. Mass. 1993) ("[T]he extent of a creditor's collateral should be evaluated at the commencement of the case."); 11 U.S.C. § 101(5)(A) ("The term 'claim' means . . . a right to payment, whether . . . secured, or unsecured."); *accord In re Abdelgadir*, 455 B.R. at 903 ("[A] creditor's right to payment, whether it later is deemed secured or unsecured depending on the value of the collateral, is fixed

---

[6] Indeed, the Bankruptcy Court acknowledged that § 1322(b)(2), by prohibiting the bifurcation of certain secured claims, creates "a certain circularity" to its argument. *In re Landry*, 462 B.R. at 322. The Bankruptcy Court nevertheless found it instructive that § 1325(a)(5)(B)(ii) directs that secured claims that can be bifurcated be treated in accordance with the value of the collateral as of the effective date of the plan. (*Id.*). However, § 506(a)(1) requires that courts consider the purpose of the valuation, and, as discussed, the different purposes of valuing the property for § 1322(b)(2) on the one hand, and for § 1325(a)(5)(B)(ii) on the other, are critical to determining the appropriate date on which to value the property here.

at the petition date."). *Cf. In re SW Hotel Venture, LLC*, 460 B.R. at 23 ("Section 502(b) of the Bankruptcy Code sets forth the general rule applicable to bankruptcy cases that, subject to certain exceptions, 'the court shall determine the amount of [a] claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount . . . .'" (citation omitted)).

The beginning of the bankruptcy case is the logical point to establish (to the extent reasonably possible) the debtor's and creditor's rights. *In re Johnson*, 165 B.R. at 528. "The scheme of Chapter 13 in attempting to accom[m]odate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors is best served by valuing the collateral as of the date of filing." *In re Dean*, 319 B.R. at 478 (quoting *In re Johnson,* 165 B.R. at 528, and citing cases that adopted *In re Johnson*'s reasoning). Additionally, it is highly likely that the value of the collateral will increase or decrease over the course of the proceeding. Determining the parties' rights early will discourage them from improperly delaying or accelerating the proceeding (or using other improper tactics) to change their substantive legal rights. *See In re Dinsmore*, 141 B.R. 499, 505-06 (Bankr. W.D. Mich. 1992) ("Looking to the date of filing is proper to discourage creditors from disclaiming security interests post-petition or attempting other tactics to defeat the debtor's ability to modify the treatment of claims.").

Against this backdrop, a majority of courts, including a majority of courts in this district, have determined that the petition date is the appropriate date for determining whether the anti-modification provision of § 1322(b)(2) applies to a claim. *In re Benafel*, 461 B.R. at 591 ("[T]he use of the petition date for determining the anti-modification provision of § 1322(b)(2) is the clear majority rule."); *see e.g.*, *In re Sarno*, 463 B.R. at 166 ("[T]he proper date for determining

the value of the debtors' home and whether [creditor's] claim is secured by that home is the

petition date . . . ." (citing *In re Abdelgadir*, 455 B.R. 896, 903)); *In re Leigh*, 307 B.R. 324, 331

(D. Mass. 2004) ("[T]he relevant time for determining the extent of a secured creditor's

collateral for § 1322(b)(2) purposes is at the commencement of the case."); *In re Lebrun*, 185

B.R. 665, 666 (D. Mass. 1995); *In re French*, 174 B.R. 1, 7 (Bankr. D. Mass. 1994); *In re*

*Boisvert*, 156 B.R. at 359 ("[T]he crucial time for determination as to whether a creditor is

entitled to invoke the protected status of a creditor secured only in residential real estate is the

time of the filing of the petition." (quoting *In re Amerson*, 143 B.R. 413, 416 (Bankr. S.D. Miss.

1992)).[7]

The Bankruptcy Court's analysis makes sense insofar as the purpose of the valuation is to

determine how the property should be distributed under Debtor's Chapter 13 plan.  It is only

logical, after all, that when distributing an asset through a bankruptcy plan that the current value

of that asset be used.  *See, e.g.*, *In re King*, 2003 Bankr. LEXIS 1133, *6-*7 (E.D. Pa. Sept. 2,

---

[7] Several of these courts, including the court in *Benafel*, were deciding the slightly different question of the appropriate time to determine whether the property is the debtor's principal residence for purposes of § 1322(b)(2). However, as discussed, in order for a creditor to take advantage of the protections of § 1322(b)(2), its claim must be (1) secured by a security interest in (2) the debtor's principal residence.  When conducting this analysis, courts first must establish that the property is the debtor's principal residence, then determine (pursuant to § 506(a)(1)) whether it is securing the creditor's claim.  Thus, by holding that the petition date is the operative date to determine the applicability of § 1322(b)(2), these courts implicitly held (or at least assumed) that the value of the property must also be determined on the petition date.  *See Benafel*, 461 B.R. at 590 ("Therefore, only if a claim is *secured* by the debtor's *principal residence* at the time of the bankruptcy petition is the debtor prohibited from modifying the creditor's interest under the plain language of [§ 1322(b)(2)]." (emphasis added) (quoting *In re Wetherbee*, 164 B.R. at 215).

Moreover, it would be illogical to determine whether the property is the debtor's principal residence for purposes of § 1322(b)(2) on the petition date, but to determine the value of the property (which may often be related to the use of the property) at a different date.  For example, suppose a debtor used the property as his principal residence on the petition filing date; then, prior to the effective date of the plan, stopped living there (perhaps due to financial hardship), as a result of which the property began to deteriorate and declined in value.  Or suppose the debtor moved out and rented the property to tenants who improved the property and increased its value.  It would be incongruous to conclude that the operative date for determining each prong of the § 1322(b)(2) analysis would be different, especially in light of the relationship between those two prongs.  Such an approach would not only be illogical, but it would allow for the possibility of gamesmanship.  *Cf. In re Dinsmore*, 141 B.R. at 505-06.

11

2003) ("[T]he majority of cases addressing valuation of collateral in the cram down context adopt the [] position . . . that collateral should be valued as of or near the confirmation date."). However, as discussed, before conducting a valuation for the purpose of distributing the property through the plan, the property must first be valued to determine whether the claim is entitled to certain statutory protections.  "The value of the bank's claim, whether it is secured or unsecured, is a distinct issue from whether [its] claim is secured by the Debtor's principal residence."  *In re Abdelgadir*, 455 B.R. at 902.  These distinct issues serve a different purpose in the Bankruptcy Code, and each valuation must be conducted in light of those purposes.  "Evaluating the character of a creditor's security as of the date of filing . . . accords with the specific statutory purpose of § 1322(b)(2)."  *In re Dinsmore*, 141 B.R. at 506.  *Cf. In re Mann*, 249 B.R. at 838 ("[F]or the purpose of determining exemptions, valuations should be fixed and not be made subject to later determinations." (citing *In re Snyder*, 249 B.R. 40 (B.A.P. 1st Cir. 2000)).

Accordingly, where, as here, the purpose of the valuation is to determine whether the bank's claim is entitled to the protection of § 1322(b)(2) (and therefore, whether the bank is entitled to relief from the automatic stay), that valuation must take place as of the date the petition was filed.

**IV.**     **Conclusion**

For the foregoing reasons, the Order of the Bankruptcy Court dated December 14, 2011, is REVERSED.  This matter is referred to the Bankruptcy Court for further proceedings consistent with this opinion.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  September 17, 2012